# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| Naser Danan, ) | CASE NO. 1:17 CV 260 |
| ) | |
| Plaintiff, ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| Vs. ) | |
| ) | |
| American Honda Motor Co., Inc., ) | **Memorandum of Opinion and Order** |
| ) | |
| Defendant. ) | |

## INTRODUCTION

This matter is before the Court upon Defendant's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed.R.Civ.Pro. 12(b)(1) and 12(b)(6). This claim arises out of a defective vehicle defendant sold to plaintiff. For the reasons that follow, the motion is DENIED.

## FACTS

For purposes of ruling on the motion, the facts asserted in the complaint are presumed true. Plaintiff, Naser Danan, brings this lawsuit against defendant, American Honda Motor Co., Inc., alleging wrongdoing in connection with the sale of a motor vehicle.

1

In August of 2013, plaintiff purchased a 2013 Acura ZDX. At the time of purchase the vehicle's odometer registered 380 miles. Defendant represented that the vehicle had a manufacturer's warranty for 4 years or 50,000 miles, and on the powertrain for six years or 70,000 miles. Plaintiff purchased the vehicle for a total sales price of $58,783.11. Immediately after purchase, plaintiff noticed that the steering controls would not illuminate and the heated seat would not function. Plaintiff contacted the dealership and brought the vehicle in for service. Defendant discovered that a blown fuse and pinched wire were the source of the electrical problems. The vehicle was in service for eight days.

On September 6, 2013, plaintiff brought the vehicle to the dealership to address intermittent rattling and ticking noises, as well as vibrations from the vehicle's roof and rear tail gate area. Plaintiff lost use of the vehicle for six days while the dealership attempted to fix the problem. Although the dealership confirmed the noises and attempted to fix the problem, it was unable to do so. As such, plaintiff returned the vehicle to the dealership and indicated that the problem remained. This time, the vehicle remained at the dealership for eleven days, yet the noise continued.

Thereafter, plaintiff wrote defendant the following letter:

Unfortunately, my experience has been nightmarish with the amount of time I have to dedicate to this along with the anguish it has caused. On several days of the week, I have defaulted to driving my 13 year old Acura TL for a commute to work. This is exhausting me starting from the no lighting on the dashboard right off the bat that your salesman assured me was so by design to the latest when I picked it up last week and was told . . .that it was to be expected in a car with this much panoramic view!!!

On November 01, 2013, plaintiff again brought the vehicle to the dealership to remedy the grating noise problem, as well as to repair a weather strip that fell off the right rear door. The vehicle remained at the dealership for five days. On December 2, 2013, plaintiff took the vehicle

2

to the dealership for the fourth time because of the rattling noises coming from the roof. The vehicle remained at the dealership for repair for five days. While dealership acknowledged the nosie, it blamed the weather.

On or around December 17, 2013, plaintiff again wrote to defendant. This time, plaintiff attached audio samples of the noise and requested that the problem be remedied. Plaintiff followed up with a third letter on February 3, 2013.

On March 10, 2014, plaintiff brought the vehicle in for the rattling noises and vibrations coming from the roof. The repair orders confirm that these noises and vibrations occurred during the technician's test drive of the vehicle. In addition, plaintiff also experienced electrical problems with the vehicle, including an inoperable dome light and garage door opener. Plaintiff left the vehicle at the dealership for ten days, during which a new moonroof assembly was installed. At this point, the odometer registered only 6,500 miles.

On or around April 10, 2014, defendant sent a letter to plaintiff offering him $3,000.00 "for his troubles" and to settle any dispute. Despite defendant's confidence, the defect persisted.

On February 9, 2015, an expert hired by defendant confirmed the noise defect and nonconformity, stated it was "stressed metal or plastic to metal tick", confirmed multiple unsuccessful repair attempts, and set forth a repair methodology. Yet neither defendant nor its agents repaired the vehicle. On or around February 27, 2015, plaintiff again brought the vehicle in to the dealership in order to address the same rattling noise. The dealership, at the direction of defendant, refused any attempt to remedy or repair the noise on the vehicle, citing pending litigation as the reason for the refusal.

On March 7, 2015, plaintiff took the vehicle in again for service to an authorized Acura

dealer in an attempt to solve the noise problem. The technician "verified client concern of the TAP, TAP, TAP noise" and attempted to correct the problem. But, the problem resurfaced.

In January 2016, plaintiff expressed his exhaustion over the constant problems with the vehicle, stating:

> This is becoming so annoying, I'm having a nervous meltdown every time I start hearing the noise. I hate having to go anywhere and it's starting to alter my lifestyle and plans as it did in previous winters.

On December 10, 2016, plaintiff took the vehicle to the dealership at which point a technician drove in the back seat and acknowledged hearing the noise. The dealership retained the vehicle to install replacement parts and, on December 15, 2016, the dealership informed plaintiff that the vehicle was "fixed and ready" for pick up. In addition, the dealership informed plaintiff that it discovered and repaired a "strut leak" pursuant to the warranty. Yet, the noise remained. According to plaintiff, "as soon as I started the engine and the car started to move the noise was quite evident." A mechanic heard the nosie and agreed. Plaintiff obtained a loaner vehicle. The vehicle was in service for 38 days.

Defendant acknowledge that the problem existed from day one. Specifically, defendant wrote, "[r]emoved the headliner to inspect- found the driver side rail was misaligned… Tech found that two rear roof sub-frame attachment tab screws … were not tightened all the way. … R&R headliner…. Glass panel replaced." Despite numerous opportunities, the defects remain and defendant has either refused or been unable to timely bring the vehicle into conformity with the warranties.

It appears that plaintiff filed a lawsuit, which he voluntarily dismissed, in state court. Plaintiff alleges that to date he has incurred $43,000 in attorney fees. Thereafter, plaintiff filed

4

this lawsuit in which he asserts four claims for relief. Count one is a claim for violation of Ohio's lemon law, O.R.C. § 1345.72, and count two is a claim for violation of the Magnuson-Moss Warranty Act ("MMWA"). Count three is a claim for breach of warranty and count four asserts a claim for "revocation of acceptance."

Defendant moves to dismiss this lawsuit on the basis that the Court lacks jurisdiction over this matter and further argues that the Ohio Lemon Law and MMWA claims fail to state claims for which relief may be granted. Plaintiff opposes the motion.

**STANDARD OF REVIEW**

1. Rule 12(b)(1)

When a court's subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of proof. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton*, 798 F.2d 913, 915 (6th Cir. 1986). This burden is not onerous. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). The party need only show that the complaint alleges a substantial claim under federal law. *Id*.

A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial attacks question the sufficiency of the jurisdictional allegations in the complaint. *Id*. Thus, those allegations must be taken as true and construed in the light most favorable to the nonmoving party. *Id*. Factual attacks, however, challenge the actual fact of the court's jurisdiction. *Id*. In such cases, the truthfulness of the complaint is not presumed. *McGee v. East Ohio Gas Co.*, 111 F.2d 979, 982 (S.D. Ohio 2000) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990)). Instead,

the Court may weigh any evidence properly before it. *Morrison v. Circuit City Stores, Inc.*, 70 F.Supp.2d 815, 819 (S.D. Ohio 1999) (citing *Ohio Nat'l*, 922 F.2d 320; *Rogers*, 798 F.2d 913).

When presented with a facial attack, the non-moving party "can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical*, 89 F.3d at 1248. Thus, such a motion will be granted only if, taking as true all facts alleged in the complaint, the Court is without subject matter jurisdiction to hear the claim. *Matteson v. Ohio State University*, 2000 WL 1456988 *3 (S.D. Ohio Sept. 27, 2000).

2. Rule 12(b)(6)

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman* (*In Re DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993). Legal conclusions and unwarranted factual inferences are not accepted as true, nor are mere conclusions afforded liberal Rule 12(b)(6) review. *Fingers v. Jackson-Madison County General Hospital District,* 101 F.3d 702 (6th Cir. Nov. 21, 1996), *unpublished*. Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

In addition, a claimant must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). A pleading

6

that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1955 (2009). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Id.* at 1949 (citations and quotations omitted). *See also, Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir.2009).

## **ANALYSIS**

1. Jurisdiction

### A. MMWA

Defendant argues that federal jurisdiction arises under the MMWA only if the amount in controversy exceeds $50,000. Defendant claims that "amount in controversy" is a term of art as it pertains to the MMWA. According to defendant, this Court cannot simply look to the purchase price of the vehicle to determine whether the amount in controversy is satisfied. Defendant claims that the Sixth Circuit has held that this Court must offset the purchase price by, among other things, the value of the use of the vehicle received by plaintiff. According to defendant, plaintiff drove the vehicle for nearly four years and accumulated 40,000 miles. As such, the amount in controversy is well below the $50,000 threshold.

In response, plaintiff argues that this "offset" only applies if the plaintiff is seeking revocation of acceptance. According to plaintiff, he is seeking rescission and, therefore, the

"offset rule" does not apply.

The MMWA provides that "[n]o claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection...(B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in [the] suit." 15 U.S.C. § 2310(d)(3)(B). The Sixth Circuit has held that in cases where a party asserts a claim for revocation of acceptance–as opposed to rescission– the formula to determine amount in controversy consists of the difference between the cost of a replacement vehicle and the present value of the vehicle in question. That figure is then further reduced by the value that plaintiff obtained from using the vehicle. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 885 (6th Cir. 2005). The Court finds that the formula set forth in *Golden* applies to this matter in that plaintiff expressly asserts a claim for "revocation of acceptance" in count four of the complaint. Although plaintiff argues in his brief in opposition that he asserted a claim for rescission, plaintiff cites to nothing in the complaint supporting his argument.

Here, plaintiff alleges that he paid the following during the sales process:

- $50,700.00 base price of the vehicle;
- $495.00 for extra tint, chrome wheels, 20 inch tires, all season mats, and LED running boards;
- $2,480.00 for extended service contract;
- $599.99 for auto spa; and
- tax, title, and documentary fees.

The total price plaintiff paid for these items is $58,783.11. Based on plaintiff's allegations, the Court finds that the replacement cost of plaintiff's vehicle is $51,195.00. The Sixth Circuit has held that costs such as finance charges and taxes are not to be included in

determining the "replacement cost" of the vehicle. *See, Golden*, 410 F.3d at 885 (declining to include finance charges in calculating amount in controversy); *Harnden v. Jayco, Inc.*, 496 F.3d 579, 582 (6th Cir. 2007)(noting that the *Golden* court used the pre-tax purchase price as the "price of the replacement vehicle"). The Court further finds that services costs, including amounts spent on extended service and auto spa, should not be factored into the replacement cost as those charges have no bearing on how much it would cost to replace the *vehicle*.

Next, the Court must reduce the $51,195.00 replacement cost by both the value of plaintiff's vehicle and the value plaintiff derived from his use of the vehicle. Here, the Court finds that when considering these factors, defendant has shown to a legal certainty that federal jurisdiction does not lie. The Court agrees with defendant that even assuming *arguendo* the current value of the vehicle in question is zero, the "use value" of the vehicle far exceeds $1,195.01, rendering the amount in controversy less than $50,000. Plaintiff does not dispute that he drove the car for four years, putting approximately 40,000 miles on the vehicle. Thus, the Court need only be convinced to a legal certainty that the value of this "use" amounts to a mere $298.75 per year (or 2.9¢ per mile).[1] The Court is so convinced. Because the value of a replacement vehicle, less the value of plaintiff's use of the vehicle, is below the $50,000 threshold, federal question jurisdiction does not exist.

B. Diversity

Although the Court has concluded that federal question jurisdiction does not arise under the MMWA, plaintiff also invokes this Courts jurisdiction based on diversity of citizenship. To

---

[1] This calculation does not take into account that surely plaintiff's vehicle has *some* current value, if even for parts.

satisfy the amount in controversy requirement for diversity jurisdiction, plaintiff must exceed $75,000. Here, defendant argues that unless the Court were to consider the $43,000 in attorney's fees that plaintiff alleges he incurred in the prior state court lawsuit, the amount in controversy falls well short of $75,000. According to defendant, by voluntarily dismissing the previous lawsuit, plaintiff cannot now recover those attorney's fees as damages. Defendant claims that the Ninth Circuit expressly held as such. If the Court were to accept plaintiff's argument, then a plaintiff would be encouraged to file a state court action, voluntarily dismiss it, and then refile in federal court once plaintiff incurred sufficient fees to satisfy the jurisdictional threshold. Defendant claims that the Court should not countenance this type of forum shopping. In response, plaintiff argues that Ohio's lemon law statute contains an attorney's fee provision and, as such, this Court must include attorney's fees in determining the amount in controversy. Plaintiff argues that even if the Court declines to include attorney's fees incurred in the state court action, the fees likely to be incurred in *this* action are to be considered.

Upon review, the Court agrees with plaintiff and finds that diversity jurisdiction exists over this matter. As a general rule, attorneys' fees are excludable in determining the amount in controversy for purposes of diversity, unless the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 377 (6th Cir. 2007)(citing *Clark v. Nat. Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir.1975) ("It is settled that the statutory penalty and a statutory attorney's fee can be considered in determining whether the jurisdictional amount is met.")). Thus, where attorney's fees are statutorily authorized, they are to be considered in determining the amount in controversy. Here, defendant does not dispute that Ohio's lemon law authorizes an award of

attorney's fees to the prevailing party. O.R.C. § R.C. 1345.75(A). *See also, Ulrich v. Mercedes-Benz, LLC*, 931 N.E.2d 599, 612 (Ohio Ct. App. 2010)("An aggrieved consumer is entitled to an award of reasonable attorney fees and costs once he prevails on a lemon-law claim.").

Thus, assuming *arguendo* that defendant is correct in its argument that the attorney's fees from the state court case cannot be considered in determining amount in controversy, defendant wholly ignores the fact that attorney's fees to be incurred in *this* matter are included in the determination. "Where a defendant seeks dismissal on amount-in-controversy grounds, the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith, that is, if it appears, to a legal certainty, that the original claim was really for less than the amount-in-controversy requirement." *Id*. (*citing Gafford v. General Electric Co.*, 997 F.2d 150, 157 (6th Cir.1993)). The Court simply cannot say to a legal certainty that the amount in controversy is less than $75,000. In connection with the MMWA claim, defendant did not attempt to demonstrate the actual amount in controversy. Rather, defendant simply established that the amount in controversy for that claim was less than $50,000. Thus, absent some argument from defendant regarding the amount of actual damages at issue, plaintiff need only recover slightly more than $25,000 in attorney's fees to meet the $75,000 jurisdictional threshold. Here, although plaintiff does not expressly allege the amount of attorney's fees he believes are at issue in prosecuting this claim, he does allege that he incurred over $40,000 in prosecuting the same claims in state court. Thus, the Court simply cannot say that, to a legal certainty, plaintiff's claims are worth less than $75,000 when attorney's fees are considered. Accordingly, the amount in controversy is satisfied and diversity jurisdiction exists over this

11

matter.[2]

        2.        Failure to state a claim

Defendant argues that plaintiff's lemon law claim fails because plaintiff has not identified a non-conformity that "substantially impairs" the use, value, or safety of the motor vehicle. According to defendant, plaintiff fails to point to a "major defect" and, instead, identifies only trivial problems. Defendant claims that Ohio is "replete with judicial decisions dismissing lemon law claims" on this basis. Upon review, the Court finds that dismissal is not appropriate. Contrary to defendant's assertions, defendant cites no case from Ohio in which a court dismissed an action at the pleading stage for failure to allege a "major defect." Rather, every case relied on by defendant involved either a grant of summary judgment or a directed verdict. Those decisions came after extensive discovery and often involved expert testimony. Defendant argues that this is a "distinction without a difference" because plaintiff attached the repair orders to the complaint. Defendant claims that the repair orders conclusively demonstrate that the vehicle did not suffer from a non-conformity that "substantially impairs" the use, value, or safety of the motor vehicle. The Court disagrees. Although those repair orders generically describe the problems with the vehicle, they do not conclusively address the primary issue, which is whether the problems "substantially impair" the value of the vehicle. Thus, discovery and expert testimony may assist plaintiff in proving this aspect of the claim.

---

[2]     Attorney's fees are not considered in calculating the "amount in controversy" under the MMWA. *Ansari v. Bella Automotive Group, Inc.*, 145 F.3d 1270, 1271-72 (11th Cir. 1998). However, because the Court has diversity jurisdiction over plaintiff's claims, the Court has supplemental jurisdiction over plaintiff's MMWA claim. *See, Suber v. Chrysler Corp.*, 104 F.3d 578 at n.12 (3rd Cir. 1997).

Here, plaintiff alleges a number of defects with the vehicle, which, according to the complaint, defendant confirmed on a number of occasions. Nonetheless, plaintiff alleges that defendant was repeatedly unable to repair the vehicle. Plaintiff claims that the problem caused him a "nervous meltdown" and that his lifestyle was altered as a result of the problems with the vehicle. At this stage in the litigation, the Court finds that these allegations are sufficient to state a claim under Ohio's lemon law. Contrary to defendant's assertions, plaintiff's allegations do not conclusively establish that the defects with the vehicle do not rise to the level of a "substantial impairment" as a matter of law. As such, dismissal is not warranted.

Defendant next argues that plaintiff's MMWA claim fails because plaintiff fails to allege a sufficient "defect" under the statute. According to defendant, for the same reasons plaintiff's lemon law claim fails, so too plaintiff's MMWA claim fails. Upon review, the Court rejects defendant's argument and adopts the analysis set forth above with respect to plaintiff's lemon law claim. For those reasons, dismissal of plaintiff's MMWA claim is not warranted.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed.R.Civ.Pro. 12(b)(1) and 12(b)(6) is DENIED.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated: 6/9/17