**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Naser Danan,** ) | **CASE NO. 1:17 CV 260** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| Vs. ) | |
| ) | |
| **American Honda Motor Co., Inc.,** ) | **Memorandum of Opinion and Order** |
| ) | |
| **Defendant.** ) | |

## INTRODUCTION

This matter is before the Court upon Plaintiff's Motion for Summary Judgment (Doc. 26). Also pending is Defendant American Honda Motor Co., Inc.'s Motion for Summary Judgment (Doc. 27). This case arises out of plaintiff's purchase of a vehicle. For the reasons that follow, the motions are DENIED, with the exception of defendant's motion as it pertains to count four. Defendant is entitled to summary judgment with respect to that count.

## FACTS

Plaintiff Naser Danan filed this lawsuit against American Honda Motor Co., Inc., alleging that the vehicle he purchased is defective. The facts of this case are largely undisputed.

1

In August of 2013, plaintiff purchased a 2013 Acura ZDX.[1] At the time of purchase the vehicle's odometer registered 380 miles. The vehicle is subject to a manufacturer's warranty. Plaintiff purchased the vehicle for a total sales price of $58,783.11. Shortly after receiving the vehicle, plaintiff noticed that various internal lighting features would not illuminate and the heated seats would not function. Plaintiff contacted the dealership and brought the vehicle in for service. Defendant discovered that a blown fuse and pinched wire were the source of the electrical problems.

On September 6, 2013, plaintiff brought the vehicle to the dealership to address intermittent rattling and ticking noises, as well as vibrations from the vehicle's roof and rear tail gate area. In addition, plaintiff indicated that the head lights intermittently turned on during the day when the headlights were set to "auto." During the test drive, the technicians were able to confirm the noises, which occurred at highway speeds. The technicians made various repairs

---

[1] Although plaintiff incorporated the facts set forth in his pleadings, plaintiff does attach an affidavit to his motion for summary judgment. In addition, plaintiff authenticates the service repair records. Plaintiff further offers the affidavits of two experts along with their corresponding expert reports. In its brief in opposition to plaintiff's motion for summary judgment, defendant asks that the Court strike the reports as a result of plaintiff's failure to provide initial disclosures. The Court will address this issue below. In addition, in its *reply* brief in support of its own motion, defendant argues for the first time that plaintiff's failure to provide initial disclosures precludes plaintiff from offering *any* evidence. Defendant further notes that it will "address" the issue via a separately filed motion in limine. No such motion, however, appears on the docket. The Court finds that defendant's argument is not well-taken in that defendant raises it for the first time in a reply brief and, as such, plaintiff did not have an opportunity to respond. Moreover, the vast majority of the evidence plaintiff offers consists of defendant's own service records.

and conducted several test drives of the vehicle. The noises, however, continued. Ultimately, after additional repairs, the repair records show that the nosie was fixed.

The following week, plaintiff returned to the dealer for a ticking noise from the roof area. The dealer confirmed the noise and determined that a stripped screw existed at the license plate garnish. The vehicle was repaired and the technician did not hear the noise after the repair.

On November 1, 2013, plaintiff brought the vehicle in for a rattle emanating from the moonroof area. In addition, certain weatherstripping needed to be replaced. During a test drive with the customer, the rattle could not be duplicated. The dealer, however, replaced the weatherstripping.

The following month, plaintiff returned to the dealer because of the rattling noise. The dealer test drove the vehicle on a number of occasions. It appears that out of five test drives, the rattle was heard only once. No repairs were made.

On March 10, 2014, plaintiff brought the vehicle in because of noises coming from the sunroof while driving over bumps. In addition, the dome lights and homelink system were not functioning. The dealer replaced a fuse and the lights and homelink system worked. During a test drive of the vehicle, the dealer confirmed various noises coming from the moonroof. A new moonroof assembly was installed and, according to the invoice, the noise ceased and was not detected upon further test drive.

Approximately two weeks later, however, the dome light and homelink system again became inoperable. The dealer determined there was a short in the system and performed repairs.

All of these repairs occurred during the first year of ownership. During this time, the

vehicle was out for service for over forty days. The noise continues to exist today. Plaintiff took the vehicle to a different authorized dealer at least twice and, on both occasions, the technicians verified plaintiff's complaint. Plaintiff nonetheless drove the vehicle for nearly 40,000 miles during the forty-one month period after purchase.

Thereafter, plaintiff filed this lawsuit in state court. Plaintiff later dismissed that case and refiled the matter here. The complaint contains four claims for relief. Count one is a claim for violation of Ohio's lemon law, O.R.C. § 1345.72, and count two is a claim for violation of the Magnuson-Moss Warranty Act ("MMWA"). Count three is a claim for breach of warranty and count four asserts a claim for "revocation of acceptance."

The parties cross-move on all claims and each opposes the other's motion.

**STANDARD OF REVIEW**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate

that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**ANALYSIS**

1. Count one (lemon law claim)

In count one, plaintiff asserts a claim for violation of O.R.C. §1345.72, which provides in relevant part:

**Duty to repair nonconforming new motor vehicles; consumer's options when repairs unsuccessful**.

(A) If a new motor vehicle does not conform to any applicable express warranty and the consumer reports the nonconformity to the manufacturer, its agent, or its authorized

5

dealer during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, the manufacturer...shall make any repairs as are necessary to conform the vehicle to such express warranty....

In the event the manufacturer is unable to conform the vehicle to the warranty, the consumer may opt for a new vehicle or return the vehicle for a refund plus incidental damages. O.R.C. § 1345.72(B). The statute defines "nonconformity" to mean "any defect or condition that *substantially impairs the use, value, or safety of a motor vehicle to the consumer* and does not conform to the express warranty of the manufacturer or distributor." O.R.C. § 1345.71(E) (emphasis added).

The statute further defines an outer limit on the reasonable number of repair attempts to be afforded to a manufacturer in attempting to conform the vehicle to the warranty:

Presumption of reasonable number of attempts to repair.

(A) ...[I]t shall be presumed that a reasonable number of repair attempts have been undertaken by the manufacturer...to conform the vehicle to any applicable express warranty if, during the period of one year following the date of original delivery or during the first eighteen thousand miles, whichever is earlier, any of the following apply:

(1) Substantially the same nonconformity has been subject to repair three or more times and either continues to exist or recurs;

(2) The vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days;

(3) There have been eight or more attempts to repair any nonconformity;

(4) There has been at least one attempt to repair a nonconformity that results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven, and the nonconformity either continues to exist or recurs.

O.R.C. § 1345.73.

Plaintiff relies on *Royster v. Toyota Motor Sales, U.S.A., Inc.*, 750 N.E.2d 531 (Ohio 2001), for the proposition that plaintiff need not establish the existence of a "nonconformity"

because plaintiff is able to show that the vehicle was out of service for a cumulative total of at least thirty days during the first year of ownership. In other words, plaintiff argues that this decision alleviates the requirements of O.R.C. § 1345.72 in its entirety, provided plaintiff is able to establish that O.R.C. § 1345.73(A)(2) applies. Defendant disagrees. According to defendant, plaintiff's reading of *Royster* goes too far.

Upon review, the Court agrees with defendant and finds that even if a plaintiff can establish that a vehicle is out of service for thirty or more calendar days, the plaintiff must nonetheless still demonstrate that the vehicle was subject to a "nonconformity." The Court agrees with defendant that plaintiff's reading of *Royster* is too broad.

In *Royster*, the plaintiff noticed that her vehicle was leaking a red fluid. The dealer determined that the vehicle suffered from a leaking head gasket that needed to be replaced. The part, however, could not be located and the vehicle was in the repair shop for a total of fifty-five days. During this time, plaintiff received a loaner vehicle at no charge. The dealer repaired the vehicle and returned it to plaintiff. Plaintiff had no further difficulties with the head gasket on the vehicle. Five months later, plaintiff brought a lemon law claim against the manufacturer.

The trial court allowed the case to proceed to a jury and plaintiff prevailed. The court of appeals overturned the verdict on the grounds that the dealer made a reasonable number of attempts to repair the vehicle and was successful in conforming the car to the warranty. The Ohio Supreme Court reversed:

> R.C. 1345.73 is at the heart of this case. The appellate court held that R.C. 1345.73(B) does not create a presumption of recovery 'but rather a presumption that a reasonable number of repair attempts to conform the vehicle to warranty have been made.' According to the appellate court, the buyer must further show that after that 'reasonable number of attempts' the vehicle still does not conform to its warranty. Because Royster had failed to prove that the [vehicle] remained defective after [the dealer's] nearly two-

7

> month repair attempt, the court ordered judgment in [the manufacturer's] favor.
>
> We disagree with the appellate court's interpretation. The Lemon Law recognizes that occasionally new cars do have problems, but if those problems keep happening, or cannot be repaired in a reasonable amount of time, then the consumer did not get what he or she bargained for. R.C. 1345.73 is the 'enough is enough' portion of the statute. That section makes the amount of repair activity on the vehicle define whether the vehicle is a lemon. R.C. 1345.73 is a kind of statute of limitations–it sets out in well-defined terms the limit of frustration a consumer must endure.

*Royster*, 750 N.E.2d at 534.

The court went on to find that whether the car was ultimately repaired is not relevant. Rather, the "unavailability" of the vehicle is the "key element." "The fact that the consumer cannot drive a newly purchased vehicle for a full month in the first year of ownership defines the vehicle as a lemon.... Nothing beyond thirty days is statutorily reasonable. Once the boundaries of reasonableness have passed, the vehicle at that point becomes, legally, a lemon." *Id.* at 535.

Based on this reasoning, the syllabus of the court provides:

> A consumer enjoys a presumption of recovery under R.C. 1345.73(B) if his or her vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days in the first year of ownership regardless of whether the vehicle was successfully repaired at some point beyond that thirty-day period.

Plaintiff argues that, because the court determined that a presumption of *recovery* exists based on this showing, plaintiff need only establish this "element" in order to succeed on a lemon law claim. Thus, regardless of the reason for repair, a vehicle legally becomes a "lemon" once this thirty-day period elapses.

Plaintiff's reading of *Royster*, however, ignores subsequent language contained in the opinion. The court determined that:

> Despite its pucker-inducing remedy, the Lemon Law does have protections for manufacturers. The law does not create remedies for buyers who have soured on their new vehicle for cosmetic or other trivial reasons. The vehicle's problem must

8

'substantially impair the use, safety, or value of the motor vehicle to the consumer.' *Id.* at 535. The "substantially impair" language is the language the Ohio legislature used to define the term "nonconformity." O.R.C. § 1345.71(E). The court went on to note that the statute requires that the vehicle suffer from a "major defect." *Id.*

Thus, it is readily apparent from the context of the opinion that the Supreme Court did not intend to eviscerate O.R.C. § 1345.72's requirement that a "nonconformity" exist before a duty is placed on the manufacturer to engage in repair attempts.

The dissents in *Royster* noted that the syllabus confused O.R.C. §§1345.72 and 1345.73. According to one dissent, "to label R.C. §1345.73's presumption a 'presumption of recovery' is to muddle the relationship between R.C. § 1345.72 and 1345.73. These are two separate statutes with distinct functions." *Royster*, 750 N.E.2d 531, 537 (Cook, J., dissenting). "A syllabus saying that R.C. § 1345.73 creates a presumption of recovery is especially confusing, given that recovery under the lemon scheme actually occurs 'not under R.C. 1345.73,' as the majority's syllabus suggests, but under R.C. 1345.72 instead." *Id.*

This Court agrees that the syllabus muddies the water in that it speaks to a presumption of "recovery," suggesting that a claim will lie provided the plaintiff is able to satisfy O.R.C. §1345.73's "repair attempts" requirement. The opinion as a whole, however, clearly indicates that the plaintiff must *also* establish a nonconformity. This is especially compelling language because the "thirty day" provision is the only provision in §1345.73 that does not speak to a nonconformity. For example, §1345.73(a) provides that a reasonable number of repair attempts will be deemed to exist if the dealership attempts to repair the same "nonconformity" on three occasions. Similarly, a reasonable number of repair attempts exists pursuant to §1345.73(a)

9

provided "there have been eight or more attempts to repair any nonconformity." Yet, §1345.73(b) does not mention "nonconformity" and instead requires only that "the vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days." In *Royster*, however, even though the vehicle satisfied §1345.73(b), the court nonetheless determined that a manufacturer receives protections from the statute because the vehicle must amount to a nonconformity or, as the court noted, a "major defect."

In light of the opinion as a whole, the Court finds that the *Royster* court did not read §1345.72 entirely out of the statute. *See*, *State v. Walker*, 730 N.E.2d 419 (Oh. Ct. App. 1999)("We recognize that the legal precedent arising from an Ohio Supreme Court case comes from the court's syllabus. However, we also recognize that the opinion of the court provides crucial guidance on interpreting the intent of the court in writing the syllabus."). Rather, the Court finds that the opinion as a whole indicates the court's intent to retain those requirements in assessing lemon law claims brought under Ohio law. Other courts are in accord. *See, e.g., Deeter v. Yamaha Motor Corp., U.S.A.*, unreported, 2005 WL 940902 (Oh. Ct. App. April 22, 2005)(although vehicle out of service for 57 days, court nonetheless addressed whether vehicle suffered from "nonconformity"). *Sirlouis v. Four Winds Intern. Corp.*, 2014 WL 3532900 (N.D. Ohio July 15, 2014)(addressing both whether a "nonconformity" exists and whether the requirements of § 1345.73 were satisfied); *Piergallini v. Alfa Leisure, Inc.*, 2008 WL 687167 (S.D. Ohio March 11, 2008)(denying summary judgment where issues of fact existed as to the existence of a nonconformity even though vehicle was out of service for more than thirty days during the first year).

The Court acknowledges plaintiff's citation to three cases that plaintiff claims support his

10

position. With regard to two of those cases, the Court disagrees that plaintiff's proposition is directly supported. *See, Ulrich v. Mercedes-Benz USA*, LLC, 931 N.E.2d 599 (Ohio Ct. App. 2010)(noting that "plaintiff did present objective evidence that his car suffered from nonconformities."); *Tracy v. Ford Motor Co.*, unreported, 2003 WL 22025063 (Oh. Ct. Com. Pleas April 3, 2003)(although indicating that plaintiff need not establish that a nonconformity "substantially impaired the use, value or safety of the vehicle" where the vehicle was out of service for more than thirty days, also noting that the car would not start). Plaintiff does rely on *Evans v. Mazda Motors of Am., Inc.*, unreported, 2007 WL 2570742 (Oh. Ct. App. Aug. 31, 2007). In that case, the court did not require plaintiff to produce any evidence of a nonconformity and, instead, determined that evidence that the vehicle was out of service for thirty days was *itself* evidence of a nonconformity. This Court notes, however, that defendant failed to oppose plaintiff's motion for summary judgment at the trial court level. To the extent the opinion could be construed as broadly disavowing a requirement that the nonconformity must meet the statutory definition set forth in O.R.C. § 1345.71(E), the Court simply disagrees. The *Royston* court expressly indicated that the statute requires a "major defect."

Accordingly, the Court rejects plaintiff's argument that a noncomformity is not required in order to establish a violation of the statute.

The Court now turns to the type of evidence that plaintiff may rely on in establishing the existence of a nonconformity. Plaintiff argues that Ohio courts allow plaintiff to rely on his own subjective beliefs as to whether a nonconformity exists. According to plaintiff, not only do courts apply the subjective test, the statute defines "nonconformity" as "any defect or condition that substantially impairs the use, value, or safety of a motor vehicle *to the consumer.*" On the

11

other hand, defendant cites a number of Ohio courts that have rejected plaintiff's interpretation of the statute and, instead, have required objective evidence of "substantial impairment."

Upon review, the Court agrees with defendant. Although plaintiff correctly notes that some Ohio courts have applied a subjective standard, the Court finds that the courts applying an objective standard are better reasoned. One such case is *Iams v. DiamlerChrysler Corp.*, 883 N.E.2d 466 (Ohio Ct. App. 2007). The *Iams* court thoroughly analyzed the split among Ohio courts and noted as follows:

> In conclusion, the case law reveals differing views of the substantial-impairment requirement. The Fifth, Sixth, and Ninth Districts have found that the Lemon Law's plain language calls for a subjective test. On the other hand, the Ohio Supreme Court has indicated that the Lemon Law excludes claims outside 'a reasonable person's notion of what constitutes an actionable claim,' and that valid Lemon Law claims involve 'major defects' and not 'cosmetic or trivial' reasons. Furthermore, several courts, including this court, have independently determined as a matter of law that certain defects did not substantially impair a vehicle's use, value, or safety, which indicates an objective standard.

*Iams*, 883 N.E.2d at 475. (citations omitted).

The *Iams* court began its analysis by noting that when statutory language is ambiguous, courts may consider things such as the "object sought to be obtained, circumstances under which the statute was enacted, the legislative history, and the consequences of a particular construction." *Id*. The court then supported its conclusion that an objective standard applies by noting the Ohio Supreme Court has indicated that the Ohio Legislature did not intend the lemon law to apply to "cosmetic or other trivial" problems. If, however, a subjective test applied, "practically every vehicle with a defect" would be a "lemon," because all that would be required is an affidavit from the plaintiff indicating that the defect substantially impaired the use, value, or safety to that consumer. If such evidence were provided on this element, the court would be

12

required to grant summary judgment in the consumer's favor. The *Iams* court indicated that it doubted that the Ohio Legislature intended such a result.

In addition, the court noted that application of the lemon law to objectively trivial or cosmetic defects would be inequitable. The recovery provisions under Ohio's lemon law are not insubstantial and, in fact, require manufacturers to provide a full refund of the purchase price, together with all collateral charges, finance charges, and incidental damages. The court noted that "it is hard to fathom that the legislature intended such a harsh remedy for objectively trivial defects." The court further noted that to apply a subjective standard would dramatically increase litigation because there is nothing to prevent a consumer from pursuing a claim for a trivial defect.

Upon review, the Court will apply an objective standard in determining whether the alleged defect "substantially" impaired the use, value, or safety of plaintiff's vehicle. The Court fully agrees with the reasoning set forth in *Iams*. *See also, Sirlouis v. Four Winds International Corp.*, 2014 WL 3532900 (N.D Ohio July 15, 2014)(finding reasoning in *Iams* persuasive and adopting "objective" standard). Moreover, the objective standard is consistent with the *Royster* court's determination that the "substantial impairment" requirement is tantamount to a showing of a "major defect," and that Ohio's lemon law would not cover cosmetic or other trivial defects. None of these protections found by the Ohio Supreme Court would be available if a plaintiff could simply aver that a trivial defect substantially impaired the use of the vehicle *to him*. Thus, this Court's conclusion is consistent with the Ohio Supreme Court's general reading of the statute.

Having concluded that plaintiff must show a nonconformity based on objective evidence,

13

the Court turns the parties' motions in this case. As an initial matter, the Court must determine whether it can consider the expert opinions offered by plaintiff. Plaintiff offers the opinions of two experts, Steven G. Friedman and Joseph Rossman. Defendant argues that the Court cannot consider these opinions for three reasons.

First, defendant argues that the opinions were not properly disclosed because plaintiff did not provide initial disclosures under Rule 26. Rules 26(a)(2)(A) and (E) govern the disclosure of expert witnesses. Absent a court order or stipulation, the rules require the disclosure of the identities of expert witnesses, as well as reports if required, at least 90 days before the date set for trial. In this matter, after a brief extension, the Court set a deadline of October 1, 2017 for the disclosure of expert reports. According to plaintiff, defendant agreed to a two-day extension and plaintiff provided the reports at issue to defendant on the agreed upon date. Defendant does not dispute these facts. Upon review, the Court rejects any argument that the expert testimony should be stricken because of any purported failure to disclose. Defendant does not dispute that it received the reports in accordance with the Court's order after a short two-day agreed upon extension. Regardless, even if an argument could be made that the expert disclosures were untimely, Rule 37(c) provides that exclusion is not required if the failure was "harmless." Here, defendant possessed the expert reports with ample time to provide rebuttal expert reports and to engage in discovery of the experts identified by plaintiff. Therefore, assuming *arguendo* that the expert testimony or report was not properly disclosed under Rule 26, the Court will nonetheless consider them in that any such failure was "harmless."

The Court further rejects defendant's blanket argument that the Court cannot consider the reports because they contravene well-established law. According to defendant, Ohio courts have

14

"routinely" held that a noise or vibration cannot, as a matter of law, constitute a "noncomformity." The Court disagrees. Although some courts have granted summary judgment to manufacturers in noise or vibration cases, the Court does not read those cases as holding that in *all* instances noise and vibrations can *never* satisfy the statutory definition of "nonconformity." Rather, expert testimony may be relevant provided it relates to whether the vehicle suffers from a defect that substantially impairs the use, value, or safety of that vehicle. Even the cases cited by defendant are in accord. By way of example, defendant relies on *Sirious*, 2014 WL 3532900 at *4 (N.D.Ohio July 15, 2014). In that case, however, the Court did not exclude the testimony, but rather determined that it did not aid the plaintiff because the expert's "cited deposition testimony does not indicate whether the vibration affected the driveability or safety or value of the vehicle...." The same cannot be said of the evidence offered by plaintiff's experts in this case.

Defendant further argues in passing in a footnote that "much of" the experts' opinions lack evidentiary foundation. Defendant goes on to note that one of the experts opines that certain electrical functions impaired the safety of the vehicle. According to defendant, these issues, which included heated seats, were fixed by defendant and could not possibly affect the safety of the vehicle. The Court will not, however, strike the entirety of the reports based on this generic argument as it pertains to limited portions of the reports. As set forth herein, the Court is not relying on the specific portion of Friedman's report that is identified by defendant in footnote 3. The Court will not *sua sponte* address any other aspects of the reports.

Upon review of the evidence, the Court finds that a genuine issue of material fact exists as to whether a nonconformity exists. In support of his request for summary judgment, plaintiff

points to multiple repair records regarding the noise. Those records disclose that the technicians confirmed the noise and attempted to fix the problem. The repair efforts appear to be extensive and include replacing the moonroof drive assembly and adjusting the fixed roof support. In addition, defendant replaced "multiple clips on different panels that were removed during the repairs due to the fact that the panels have been removed multiple times." In addition, plaintiff provides the Court with two video clips in which the noise is readily detectable.

Plaintiff further provides evidence from his experts. Rossman testifies that he is an ASE Certified Master Technician with over forty years of automotive and truck work experience. He possesses a degree in Automotive Mechanics from Ferris State University. Rossman reviewed the repair records and test drove the vehicle. During the test drive, the noise was discernable. Based on his extensive expertise in the automotive industry, Rossman testifies that:

> [A] problem and/or condition exists with the sunroof mounting and/or the body seams in the roof area..., which are causing the body to shift or flex when driving, thus causing the intolerable noise in the headliner/roof area. In my opinion, these problems result from a defective weld or improper fitting of the sheet metal components; when the body was welded and fit together, something was out of alignment or a bad series of welds was performed.

(Doc. 26-1 at ¶¶ 19-20).

As a result of this and other conditions, Rossman testifies that "operating the vehicle...is very annoying and causes significant driver distraction." (Id. at ¶ 22). Plaintiff's other expert, *i.e.*, Friedman, is a licensed automobile dealer who owns a used car dealership. He has worked in the retail car business for over forty years and holds a B.S. degree in business. Friedman further indicates that he is knowledgeable about the value of automobiles. He reviewed all of the service records for the vehicle. Friedman avers that "he would be reluctant to purchase the vehicle for [his] lot," and that he could sell the vehicle "for about half of its NADA value." He

16

further indicates that, as a result of the problems with the vehicle, any dealer would be legally obligated to disclose them to a potential buyer. As such, the value of the vehicle is "drastically" impacted.

Based on this evidence, taken as a whole, the Court finds that a reasonable juror could conclude that the vehicle suffers from a defect that substantially impairs its use, value, or safety. As set forth above in the context of defendant's request to strike plaintiff's experts, the Court rejects defendant's argument that Ohio courts have determined that nosie or vibration defects can never satisfy the statute. Rather, each case must be reviewed based on its particular facts and the evidence presented by the parties. Defendant cites to *Benit v. Mercedes Benz USA, LLC*, 2009 WL 751153 in support of its position that "nosie" defects are not actionable under Ohio's lemon law. As an initial matter, the case at issue in *Benit* proceeded to a jury trial. And, even though the Sixth Circuit indicated that no reasonable juror could have found for the plaintiff, the Court finds the facts easily distinguishable. In *Benit*, plaintiff's expert testified that the vehicle was "operable, had no performance problems, and its engine and handling driving characteristics were fine." *Id*. (quotations omitted). The court noted that the only "problem" with the vehicle was a "shudder" that occurred within the first ten feet of take-off, but that after ten feet, the car smoothed out and "kept on going normally." *Id*. And, the shudder could be corrected by accelerating lightly instead of attempting a rapid acceleration. *Id*. These facts are a far cry from those presented in this case. Here, plaintiff's expert testifies that the noise emanates from a defective weld or improper fitting of the sheet metal components. Another expert testifies that the condition of the vehicle substantially impairs its value by 50%. Similar evidence was not presented in *Benit*. Defendant's citations to other cases are similarly distinguishable. *See, e.g.,*

17

*Iams*, 174 OhioApp.3d at 477-78 (defect in removable hard top that caused the vehicle to have increased wind nosie does not rise to level of nonconformity where reasonable purchaser would not expect quiet ride from vehicle and leaving open the question of whether the same would hold true if the vehicle at issue was a sedan); *Miller v. DaimlerChrysler, Motors Corp.*, 2001 WL 587496 (Oh. Ct. App. May 31, 2001)(court did not err in granting directed verdict where only evidence of defect was plaintiff's self-report, no technician confirmed the nosie, and plaintiff did not present evidence tying the nosie to a "defect in material, workmanship or factory preparation covered by the warranty").

On the other hand, the Court is not convinced that plaintiff is entitled to summary judgment. As defendant notes, plaintiff was able to drive the vehicle despite the alleged nonconformity. In fact, plaintiff drove the vehicle for nearly 40,000 miles in less than four years. This is so even though plaintiff had another Acura at his disposal. This is evidence that the statutory definition of nonconformity is not met in this case. In evaluating the parties' evidence as a whole, the Court finds that genuine issues of material fact exist as to whether the vehicle suffers from a "nonconformity" as that term is defined by statute. Thus, neither party is entitled to summary judgment.

    2. Counts two and three (the warranty claims)

Plaintiff asserts warranty claims in counts two and three. Count two is brought under the Magnuson-Moss Warranty Act ("MMWA") and count three is asserted pursuant to Ohio law. These two claims can be addressed together:

> The elements of an Ohio breach of warranty claim are identical to the elements of a Magnuson–Moss Warranty Act claim.... To state a claim for a violation of the Magnuson–Moss Warranty Act or breach of warranty, the plaintiff must show that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii)

18

the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts. [T]he applicability of the Magnuson–Moss Act is directly dependant upon a sustainable [state law] claim for breach of warranty.

*Ultimax, Inc. v. Mercedes-Benz USA, LLC,* 2008 WL 974036 (S.D. Ohio April 8, 2008).

And, although the boundaries of a state law breach of warranty claim are not necessarily coterminous with Ohio's lemon law, the Court notes that in this case the parties essentially concede that the claims rise and fall together. Thus, for the same reasons set forth above, the Court finds that genuine issues of material fact exist precluding summary judgment on the warranty claims.[2]

3. Count four (revocation of acceptance)

In count four, plaintiff purports to revoke acceptance of the vehicle. Defendant, however, argues that the claim fails because plaintiff and defendant are not in privity of contract. Rather, defendant is the manufacturer and plaintiff purchased the vehicle from a dealer. Plaintiff does not dispute this argument. Upon review, the Court agrees with defendant and finds that plaintiff's common law claim for "revocation of acceptance" fails because there is no evidence that plaintiff and defendant are in privity. *See, e.g.*, *Aluminum Line Prods. Co. v. Rolls-Royce Motors*, 649 N.E.2d 887 (Oh. Ct. App. 1994). Plaintiff, however, is entitled to seek all of the remedies outlined in O.R.C. § 1345.72(B), as the statute is directed at a "manufacturer."

**CONCLUSION**

For the foregoing reasons, the parties cross-motions for summary judgment are DENIED,

---

[2] Defendant argues that a nosie is not a defect under the warranty. As set forth above, however, plaintiff's expert indicates that the nosie emanates from a problem with a defective weld or improper fitting of the sheet metal components.

19

with the exception of defendant's motion as it pertains to count four. Defendant is entitled to summary judgment with respect to that claim.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated: 2/21/18